UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                                    Case No. GL 14-01029-jtg

RONI S. PERKINS,                                          Chapter 13

        Debtor.                                    Hon. John T. Gregg

_____/

RONI S. PERKINS,

        Plaintiff,                                 Adv. Proc. No. 14-80213-jtg

v.

LVNV FUNDING, LLC and RESURGENT
CAPITAL SERVICES,

        Defendants.

_____/

## MEMORANDUM DECISION REGARDING MOTION
## TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

**APPEARANCES**:  Robert W. Dietrich, Michael T. Brown, DIETRICH LAW FIRM, Lansing, Michigan, for Roni S. Perkins.  Nabil G. Foster, HINSHAW & CULBERTSON LLP, Chicago, Illinois, for LVNV Funding, LLC and Resurgent Capital Services, L.P.

This matter is before the court on a Motion to Dismiss and brief in support thereof [Adv. Dkt. No. 15] (collectively, the "Motion to Dismiss") filed by LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, L.P. ("Resurgent," and together with LVNV, the Defendants"), defendants in the above-captioned adversary proceeding.[1]  The issue before the court is whether the Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the

---

[1]    LVNV and Resurgent are no strangers to alleged violations of the FDCPA due to the filing of a proof of claim subject to a statute of limitations defense.  Through independent research, this court has identified no less than fourteen (14) published opinions considering the conduct of LVNV and/or Resurgent under similar circumstances.

"FDCPA") by filing a "stale" proof of claim in the underlying Chapter 13 bankruptcy case.[2]

This issue has been addressed, without consensus, by bankruptcy courts, district courts, and at

least one circuit court of appeals throughout the country.  Some courts have held that the filing of

a stale proof of claim is a *per se* violation of the FDCPA, while other courts have held that the

filing of a stale proof of claim can never give rise to a violation under the FDCPA.  This court

believes the answer lies somewhere in between.  For the following reasons, the court shall grant

the Motion to Dismiss.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" over all cases under

the Bankruptcy Code, but may refer bankruptcy cases to the bankruptcy courts.[3]  28 U.S.C.

§ 157(a); 28 U.S.C. § 1334(a).[4]  Upon referral, bankruptcy courts are authorized to hear,

determine, and enter appropriate orders and judgments in core proceedings "arising under" the

Bankruptcy Code, or "arising in" a case under the Bankruptcy Code.   28 U.S.C. § 157(b)(1).[5]

Proceedings "arising under" the Bankruptcy Code are proceedings that involve a cause of action

created or determined by a statutory provision of the Bankruptcy Code.  *Mich. Emp't Sec.*

*Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir.

---

[2]     Courts have recognized an inherent tension between the FDCPA's remedial purpose and its potential for abuse.  On the one hand, debt collectors file stale proofs of claim with great frequency and have therefore created "a deluge [that] has swept through U.S. bankruptcy courts of late."  *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1256 (11th Cir. 2014).   On the other hand, the FDCPA has given rise to a "cottage industry" comprised of "professional plaintiffs."  *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513-14 (6th Cir. 2007) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 138-39 (E.D.N.Y. 2006)).

[3]     Unless otherwise stated herein, the term "Bankruptcy Code" refers to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*.

[4]     The United States District Court for the Western District of Michigan has made such a reference.  LCivR 83.2(a).

[5]     Bankruptcy courts are required to initially determine whether a particular proceeding is a core proceeding. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992); *Spence v. Pontack (In re Tvorik)*, 83 B.R. 450, 454 (Bankr. W.D. Mich. 1988) (Gregg, J.).

1991) (citation omitted). Proceedings "arising in" a case under the Bankruptcy Code are proceedings that could only arise in a bankruptcy case and would have no existence outside of a bankruptcy case. *Id.* (citation omitted).

In this adversary proceeding, the relief sought neither arises under the Bankruptcy Code, nor does it arise in a case under the Bankruptcy Code. Rather, the causes of action in this adversary proceeding arise under the FDCPA. Similarly, this adversary proceeding is not a proceeding that can arise solely in the context of a bankruptcy case, because the causes of action may be pursued without the prerequisite of a bankruptcy filing. As such, this adversary proceeding is not a core proceeding.

Nonetheless, this court may exercise jurisdiction if the proceeding is "non-core, but related to" the bankruptcy. 28 U.S.C. § 157(c)(1). The Sixth Circuit Court of Appeals has stated that "'[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Wolverine Radio Co.*, 930 F.2d at 1142 (quoting *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3d Cir. 1984)). Because the causes of action in this adversary proceeding could form the basis for increased payments to creditors under the plan previously confirmed by the Plaintiff [Dkt. No. 5] in her bankruptcy case, this adversary proceeding is non-core, but related to the Plaintiff's bankruptcy. *See*, *e.g.*, *Tolliver v. Bank of America (In re Tolliver)*, 464 B.R. 720, 732-33 (Bankr. E.D. Ky. 2012) (related to jurisdiction because potential recovery from FDCPA claim could augment Chapter 13 estate); *see also Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002) (related to jurisdiction because potential recovery from legal malpractice claim would represent asset available for distribution to creditors).

Although the court may hear this adversary proceeding, it may not enter a final judgment or order unless all of the parties to the adversary proceeding consent.  28 U.S.C. § 157(c)(1) – (2).  Absent consent, this court is required to submit proposed findings of fact and conclusions of law to the District Court, which the District Court reviews *de novo*.  *Id*.; *see Boyd v. King Par, LLC*, 2011 WL 5509873, at *1 (W.D. Mich. Nov. 10, 2011) (Bell, J.).

The authority of bankruptcy courts to adjudicate certain matters has a long history extending at least to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), where the United States Supreme Court held that jurisdictional aspects of the Bankruptcy Reform Act of 1978 were unconstitutional.  In response, Congress enacted new legislation, the Bankruptcy Amendments and Federal Judgeship Act of 1984, in an attempt to cure the constitutional defects in the Bankruptcy Reform Act.  However, in 2011, the authority of the bankruptcy courts to enter a final judgment on certain matters was again challenged.  *See Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594 (2011).[6]  In *Stern*, the Supreme Court held that the bankruptcy court lacked authority under Article III of the Constitution to enter a final judgment as to a state common law counterclaim.  *Id*. at 2611.  *Stern* gave rise to a new term in bankruptcy parlance – a "*Stern* claim," which is generally defined as a "claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter."  *Exec. Benefits Ins. Agency v. Arkison*, __ U.S. __, 134 S. Ct. 2165, 2170 (2014).

---

[6]   Much has been, and undoubtedly will be, written about *Stern* and related decisions.  Because this court is primarily concerned with the issue of implied consent, it has intentionally limited its discussion of *Stern*.

Soon thereafter, bankruptcy courts and appellate courts were confronted with numerous challenges to the ability of the bankruptcy courts to enter a final judgment or order on *Stern* claims. One of these challenges was whether parties could consent to the entry of a final judgment or order by a bankruptcy court with respect to *Stern* claims. The Sixth Circuit held that they could not. *See Waldman v. Stone*, 698 F.3d 910, 918 (6th Cir. 2012). However, a circuit split arose when the Ninth Circuit held that bankruptcy courts could enter final judgments on *Stern* claims upon the consent of the parties. *Exec. Benefits Ins. Agency v. Arkison*, 702 F.3d 553, 567 (9th Cir. 2012).

In 2014, the Supreme Court revisited *Stern* when it considered whether bankruptcy courts have the authority to even enter proposed findings of fact and conclusions of law with respect to *Stern* claims. *Arkison*, 134 S. Ct. at 2165. The Court answered in the affirmative, holding that *Stern* claims should be treated as if they are the equivalent of claims in non-core, related to proceedings. *Id*. at 2174. The Court found it unnecessary, at that time, to determine whether parties could consent to final adjudication by bankruptcy courts of *Stern* claims and, by implication, claims in non-core, related to proceedings. *Id*. at 2170 n.4.

Approximately one year after *Arkison*, the Supreme Court again revisited *Stern*. *See Wellness Int'l Network, Ltd. v. Sharif*, __ U.S. __, 135 S. Ct. 1932 (2015). In *Wellness,* the Court effectively overruled *Waldman*, when it recognized that consent to the adjudication of claims in a non-core, related to proceeding need not be express:

> Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent; it states only that a bankruptcy court must obtain "the consent" – consent *simpliciter* – "of all parties to the proceeding" before hearing and determining a non-core claim. § 157(c)(2). And a requirement of express consent would be in great tension with our decision in *Roell v. Withrow*, 538 U.S. 580, 123 S.Ct. 1696, 155 L.Ed.2d 775

> (2003)... The implied consent standard articulated in *Roell* supplies the appropriate rule for adjudications by bankruptcy courts under § 157. Applied in the bankruptcy context, that standard possesses the same pragmatic virtues – increasing judicial efficiency and checking gamesmanship – that motivated our adoption of it for consent-based adjudications by magistrate judges. *See id.*, at 590, 123 S.Ct. 1696. It bears emphasizing, however, that a litigant's consent – whether express or implied – must still be knowing and voluntary. *Roell* makes clear that the key inquiry is whether "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the non-Article III adjudicator.

*Id.* at 1947-48.

After *Wellness*, it is clear that this court has the authority to enter a final judgment or order disposing of a non-core, related to proceeding upon the consent of the parties. The question, therefore, is whether the parties in this adversary proceeding have consented, expressly or implicitly, to final adjudication by this court.

In non-core, related to proceedings in this District "in which the parties timely *object* to the entry of a final judgment or order by the bankruptcy judge, the bankruptcy court shall file and serve proposed findings of fact and conclusions of law. . ." LCivR 83.2(b) (emphasis added); *see also Roell v. Withrow*, 538 U.S. 580, 586 (2003) (notification of right to refuse adjudication by non-Article III court is prerequisite to inference of consent). The Local Rules of the District Court thus notify the parties at the outset of an adversary proceeding that they have the right to decline to have the bankruptcy court enter a final order or judgment in a non-core, related to proceeding.

Here, the parties' actions are indicative of consent to entry of a final judgment or order by this court. None of the parties have objected, as contemplated by the Local Rules of the District Court, to the entry of an order by this court on the Motion to Dismiss. All of the parties in this adversary proceeding are represented by competent legal counsel. *See* LCivR 83.1(j) (attorneys

admitted to practice "shall be presumed to know the Local Rules"). The Plaintiff is represented by two attorneys who appear with great frequency in this District and are thus intimately familiar with the Local Rules of not only this court, but also the District Court. Similarly, the Defendants are represented by at least one attorney in a national law firm who has been admitted to practice in this District since 2012. The court therefore concludes that by failing to take action pursuant to the Local Rules of the District Court, the parties have knowingly and voluntarily elected to have this court enter a final judgment or order.

In addition, the Plaintiff has separately given her implied, if not express, consent to the entry of a final judgment or order by this court in her Complaint (as defined below) and Response (as defined below) to the Motion to Dismiss. The Plaintiff decided to file her Complaint in this court, as opposed to the District Court. The Complaint includes jurisdictional allegations, two of which state that, at least under the Plaintiff's interpretation, this adversary proceeding is a core proceeding. (Compl. at ¶¶ 4, 7.) While the court disagrees with the Plaintiff's characterization of this matter as a core proceeding for reasons already stated, the court infers from the allegations in the Complaint that the Plaintiff consents to entry of final judgment or order, as opposed to submission of proposed findings of fact and conclusions of law to the District Court. Moreover, in the Complaint, the Plaintiff expressly requests that "this Honorable Court enter judgment for the Plaintiff and against the Defendants" for damages under the FDCPA, punitive damages, sanctions, and any other relief that this court believes is "just, equitable and proper." (Compl. at p. 7.) Taking the allegations and requests for relief in the Complaint on the whole, the Plaintiff has implicitly, if not expressly, consented to the jurisdiction of this court to enter a final judgment or order in this adversary proceeding.

The Defendants have also consented to the entry of a final judgment or an order by this court. In their Motion to Dismiss, the Defendants expressly request that this court enter an order dismissing the Complaint. (Mot. to Dismiss at p. 1.) This request is reiterated in the Reply (as defined below) filed by the Defendants. (Reply at p. 10.) Finally, the Defendants have not filed a motion to withdraw the reference or otherwise intimated, whether through pleadings or during hearings, that they do not consent to this court's entry of a final judgment or order. *See* 28 U.S.C. § 157(d).

In sum, the parties' actions are indicative of their knowing and voluntary consent to the entry of a final judgment or order by this court. The court therefore concludes that it has the authority to enter an order with respect to the Motion to Dismiss.[7]

## **BACKGROUND**

Though the facts alleged in the Complaint are relatively straightforward and construed in the light most favorable to the Plaintiff, they are nonetheless extremely important and form the basis for this court's decision. Sometime around the year 2000, the Plaintiff maintained an account with an entity by the name of "Bankfirst." (Compl. at ¶¶ 13-14.) As a result of this account and related transactions, the Plaintiff became liable to Bankfirst for breach of contract.[8] (Compl. at ¶ 23.) In September of 2000, Bankfirst "charged off" the debt owed by the Debtor. (Compl. at ¶¶ 23-24.) Approximately six years later, the statute of limitations for the breach of contract claim under Michigan law expired. (Compl. at ¶¶ 23-24.) Over the next several years,

---

[7]  If a court grants dismissal under Fed. R. Civ. P. 12(b)(6), the order is typically not a final order disposing of the proceeding because the party will be given at least one opportunity to amend. *See*, *e.g.*, *CNH America, LLC v. International Union, United Auto., Aerospace and Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011). In the event that the party fails to timely amend, a court's order of dismissal becomes final. *See Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845-46 (6th Cir. 2007) (citations omitted).

[8]  The Complaint does not explain the nature of the relationship between Bankfirst and the Plaintiff, other than that the Plaintiff maintained an account with Bankfirst. In all likelihood, Bankfirst issued a credit card to the Plaintiff, but the court need not know the precise nature of the relationship in order to decide the issue before it.

the debt was transferred to and from various third persons until it was ultimately transferred to LVNV, who retained Resurgent to administer and service the debt. (Compl. at ¶¶ 14-18.)

On February 21, 2014, the Plaintiff filed a petition for relief under Chapter 13 of the Bankruptcy Code. (Compl. at ¶ 19.) Concurrently with the filing of her petition, the Plaintiff filed her Schedules [Dkt. No. 1], which listed LVNV as holding an undisputed, liquidated, and non-contingent claim against the Plaintiff in the amount of $1,212.02. (*See* Schedule F.) In addition to her petition and her Schedules, the Plaintiff filed a creditor matrix [Dkt. No. 1]. The creditor matrix identifies LVNV as a creditor entitled to receive notice in the Plaintiff's bankruptcy case.

Shortly after the Plaintiff filed her petition, the court entered on its docket and served on the creditor matrix, including LVNV, a notice of the bankruptcy case [Dkt. Nos. 7, 12]. The notice established certain deadlines, including the bar date for creditors to file proofs of claim against the Plaintiff's bankruptcy estate. Resurgent, on behalf of LVNV, timely filed a proof of claim [Claim No. 12] against the Plaintiff's estate in the amount of $611.82, approximately one-half of the amount identified by the Plaintiff on her Schedule F. (Compl. at ¶ 20.) The proof of claim included an addendum entitled "Proof of Claim – Account Detail." In the addendum, Resurgent disclosed, among other things, (i) the last four digits of the Plaintiff's account number related to the debt, (ii) the amount LVNV asserted was due as of the petition date, (iii) the date upon which the debt was "charged off," (iv) the date of the last payment, and (v) the date of the last transaction.

On September 4, 2014, the Plaintiff filed her complaint in this adversary proceeding [Adv. Dkt. No. 1] (the "Complaint").[9] In the Complaint, the Plaintiff seeks damages against the

---

[9]     The Complaint contains two counts labeled as "Violations of the FDCPA" and "Attorney's Fees." The first count alleges violations under four separate sections of the FDCPA.

Defendants for their alleged violations of the FDCPA. According to the Plaintiff, the proof of claim filed by Resurgent on behalf of LVNV gives rise to the following violations under the FDCPA:

> (i) attempting to collect a debt without first obtaining verification of the same, including the validity of the debt, pursuant to 15 U.S.C. § 1692g(b);

> (ii) collecting or attempting to collect amounts not permitted by law and by otherwise using unfair and deceptive methods in violation 15 U.S.C. § 1692f(1);

> (iii) engaging in conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with collection of a debt pursuant to 15 U.S.C. § 1692d; and

> (iv) misrepresenting the legal status of the debt in violation of 15 U.S.C. § 1692(e)(2).

(Compl. at ¶¶ 23, 36-39.) It can be fairly stated that the Complaint contains few material factual allegations beyond recitations of the aforementioned sections of the FDCPA and the Defendants' filing of the proof of claim.[10]

After being granted extensions to respond to the Complaint, the Defendants filed their Motion to Dismiss, in which they contend that the Complaint should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Bankr. P. 7012(b)(6) (incorporating Fed. R. Civ. P. 12(b)(6)) because (i) the filing of a proof of claim is not a collection activity under the FDCPA, (ii) the Bankruptcy Code, not the FDCPA, provides relief to debtors, and (iii) a proof of claim is not the equivalent of a complaint for purposes of determining violations under the FDCPA.

---

[10] The Complaint attaches a copy of the proof of claim filed by Resurgent. This court may therefore consider the proof of claim when deciding whether to grant or deny the Motion to Dismiss. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)) (documents attached to pleadings are incorporated and may be considered on motion to dismiss).

In her response to the Motion to Dismiss [Adv. Dkt. No. 17] (the "Response"), the Plaintiff argues, among other things, that (i) the filing of a "stale" proof of claim is an attempt to collect a debt in violation of the FDCPA, (ii) the Bankruptcy Code does not preempt the FDCPA, and (iii) a proof of claim is the equivalent of a complaint, the filing of which would result in a violation of the FDCPA.  The Defendants subsequently filed a reply brief [Adv. Dkt. No. 18] (the "Reply") seeking to distinguish the authority relied upon by the Plaintiff in her Response.

On December 2, 2014, this court held a hearing on the Motion to Dismiss, after which the court took the matter under advisement.[11]  After carefully considering the parties' written briefs and oral arguments, the court shall grant the Motion to Dismiss.[12]

## LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part, that a party may seek dismissal of a complaint for the "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a

---

[11]  The court subsequently conducted two telephonic status conferences.  During the first status conference, the court advised the parties that a petition for certiorari had been filed with the United States Supreme Court that requested consideration of an issue nearly identical to the issue in this adversary proceeding.  The court elected to hold the Motion to Dismiss in abeyance pending a decision regarding certiorari.  *See Slaughter v. LVNV Funding, LLC*, 2015 WL 627954, at *4 (N.D. Ala. Feb. 12, 2015) (suggesting LVNV should file motions to stay proceedings in all pending cases with same underlying issues until decision regarding certiorari made).  On April 20, 2015, the Supreme Court denied certiorari.  *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1844 (U.S. Apr. 20, 2015).  Thereafter, this court conducted its second status conference during which the court invited notices of supplemental authority.  The Plaintiff accepted this invitation, albeit retroactively [Adv. Dkt. No. 22].  The Defendants neither attended the status conference nor did they timely file a notice of supplemental authority.  The Defendants did, however, submit untimely notices of supplemental authority to this court [Adv. Dkt. Nos. 27-28].  Although the court has independently examined additional authority when formulating this Memorandum Decision, it declines to rely on the untimely submissions from the Defendants.

[12]  The court previously considered the Plaintiff's objection [Dkt. No. 28] to the proof of claim.  At the hearing on the objection, both the Plaintiff and the Defendants agreed that the statute of limitations provided the Plaintiff with a valid affirmative defense to the breach of contract claim evidenced by the proof of claim.  The Defendants offered to withdraw the proof of claim, while the Plaintiff expressed a desire to have the objection sustained.  For purposes of expediency and efficiency, the court entered an order [Dkt. No. 47] sustaining the Plaintiff's objection to the proof of claim.

recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted).

In determining a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations as true and construe all inferences from those allegations "in a light most favorable for the plaintiff." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993); *see Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). In general, however, a court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903. The court must be cognizant that "[t]he purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not the probability of success on the merits." *Kennedy v. R.W.C., Inc.*, 359 F. Supp. 2d 636, 639 (E.D. Mich. 2005).

A court must determine whether a complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard is not the equivalent of a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Where the facts as pled do not permit a court to infer more than a mere possibility of misconduct, the complaint has alleged, but not shown, that the plaintiff is entitled to relief. *Id.* at 679. A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555.

## DISCUSSION

### A.      The FDCPA Has Not Been Impliedly Repealed by the Bankruptcy Code

As a threshold matter, this court must determine whether the FDCPA and the Bankruptcy Code co-exist.[13]  The Sixth Circuit has yet to consider whether the FDCPA was impliedly repealed by the Bankruptcy Code.  Other circuit courts of appeals have come to conflicting conclusions.  *Compare Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510-11 (9th Cir. 2002) (Bankruptcy Code precludes relief under FDCPA) *with Randolph v. IMBS, Inc.*, 368 F.3d 726, 732 (7th Cir. 2004) (Bankruptcy Code not impliedly repealed by FDCPA); *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 271-78 (3d Cir. 2013) (same and collecting cases); *see also Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95-96 (2d Cir. 2010) (holding that filing of inflated proof of claim cannot form basis for FDCPA violations because debtor already receives protection from Bankruptcy Code but declining to address larger issue of whether all claims under FDCPA precluded by Bankruptcy Code).[14]

In *Randolph* the Seventh Circuit considered the relationship between the automatic stay and the FDCPA.  *Randolph*, 368 F.3d at 370.  According to the Seventh Circuit, although section

---

[13]      In their Motion to Dismiss, the Defendants never directly argue that the FDCPA was impliedly repealed or is otherwise precluded by the Bankruptcy Code.  This court would therefore typically decline to address such issue in this Memorandum Decision.  *See Crawford*, 758 F.3d at 1262 n.7 (court would not consider implicit repeal or other form of preclusion because LVNV did not contend that the Bankruptcy Code "displaces" or "preempts" the FDCPA).  However, for some reason, the *Plaintiff* raised the issue in her Response.  (Resp. at p. 10.) The court therefore feels compelled to briefly consider it.

[14]      Several courts have identified the issue as one of preemption.  Technically though, one federal statute does not preempt another federal statute.  *Marshall v. PNC Bank, N.A. (In re Marshall)*, 491 B.R. 217, 226 n.5 (Bankr. S.D. Ohio 2012) (citing *Randolph*, 368 F.3d at 730) (noting that preemption is inapplicable to the intersection of two federal statutes because Supremacy Clause of Constitution not implicated)); *Conley v. Centr. Mort. Co.*, 414 B.R. 157, 159 (E.D. Mich. 2009) (same).

362 of the Bankruptcy Code overlaps with certain provisions of the FDCPA, it is possible for parties to comply with both statutes. *Id.* Relying on a table in its decision that compares and contrasts violations under the FDCPA and the Bankruptcy Code, the Seventh Circuit noted that "[i]t would be better to recognize that the statutes overlap, each with coverage that the other lacks – the [Bankruptcy] Code covers all persons, not just debt collectors, and all activities in bankruptcy; the FDCPA covers all activities by debt collectors, not just those affecting debtors in bankruptcy. Overlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both." *Id.* at 730-31. The Seventh Circuit also rejected the decision of the Ninth Circuit in *Walls*, which adopted the opposite view from *Randolph*, without substantive analysis. *Id.*[15]

In *Walls* the Ninth Circuit held that the Bankruptcy Code impliedly repealed the FDCPA. *Walls*, 276 F.3d at 510-11. However, as numerous courts have inferred, *Walls* did not apply traditional principles of implied repeal. *See*, *e.g.*, *Simon*, 732 F.3d at 274 (adopting *Randolph* because *Walls*, in part, relied on previous Ninth Circuit decision addressing preemption, not implied repeal); *In re Marshall*, 491 B.R. at 226 (noting that the cases cited in *Walls* fail to explain implied repeal of FDCPA by Bankruptcy Code).[16] Instead, *Walls* simply concluded that to allow a FDCPA claim based on a violation of the discharge injunction would "circumvent the remedial scheme of the [Bankruptcy] Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt." *Walls*, 276 F.3d at 510. While this

---

[15]     In *Randolph* the Seventh Circuit succinctly stated only that it declined to follow *Walls* to the extent *Walls* stands for the proposition that the FDCPA creates an irreconcilable conflict with the Bankruptcy Code. *Id*. at 732-33.

[16]     The Third Circuit has comprehensively identified published decisions addressing whether the FDCPA was precluded by the Bankruptcy Code in a footnote. *Simon*, 732 F.3d at 271 n.7. This court therefore need not cite those decisions herein and instead incorporates the footnote in *Simon* by reference to highlight the split of authority.

court is in no position to criticize *Walls*, it is required to consider the issue before it in accordance with the principles of implied repeal as instructed by the Sixth Circuit.

The Sixth Circuit has established a general framework for the doctrine of implied repeal. "Repeals by implication are not favored in the law. . ." *Beckert v. Our Lady of Angels Apartments, Inc*., 192 F.3d 601, 606 (6th Cir. 1999) (citing *United States v. Spinelle*, 41 F.3d 1056, 1059 (6th Cir. 1994) (citation omitted)).  Rather, when two statutes are capable of co-existence, courts have a duty to regard each as effective in the absence of Congressional intent to the contrary.  *Id*. (citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *United States v. Borden Co*., 308 U.S. 188, 198 (1939)).  Implied repeals are, however, permitted in the following limited circumstances:

> (1)  [w]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; <u>and</u>
>
> (2)  [i]f the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.  But in either case, the intention of the Legislature to repeal must be clear and manifest.

*Id*. at 607 (citing *Gallenstein v. United States*, 975 F.2d 286, 291 (6th Cir. 1992) (quotation omitted) (emphasis added)); *United States v. Tackett*, 113 F.3d 603, 608 (6th Cir. 1997) (positive repugnancy must exist, and even then old law repealed only *pro tanto* to extent of repugnancy) (citation omitted); *Lietz v. Flemming*, 264 F.2d 311, 313 (6th Cir. 1959) (same) (citation omitted).

In a situation analogous to this adversary proceeding, the United States District Court for the Eastern District of Michigan held that the Bankruptcy Code did not implicitly repeal the Real Estate Settlement Procedures Act, otherwise known as "RESPA." *Conley*, 414 B.R. at 160; *see Kline v. Mort. Elec. Sec. Sys.*, 659 F. Supp. 2d 940, 950-51 (S.D. Ohio 2009) (relying on

*Randolph* in concluding Bankruptcy Code did not impliedly repeal FDCPA).  This court finds the decision in *Conley* to be well reasoned and instructive.

In *Conley*, the court recognized that Congress did not intend the Bankruptcy Code to act as a substitute for RESPA.  *Id*. at 160.  According to the court, the Bankruptcy Code applies only to those in bankruptcy, "not the larger class of consumers not necessarily in bankruptcy."  *Id*.  As such, the court emphasized that the Bankruptcy Code simply does not cover the "whole subject" of RESPA.  *Id*.  The court also found that the methods of obtaining information under the Bankruptcy Code are by no means in irreconcilable conflict with RESPA.  *Id*.  The court explained:

> In other words, the issue is not whether a QWR differs from Rule 9014 – it does – but whether the Bankruptcy Code and RESPA are irreconcilable.  Whether statutes are irreconcilable depends upon whether there is conflicting congressional intent. . . RESPA is intended to insure that consumers receive greater and timelier information.  The intent of the Bankruptcy Code, and the corresponding Federal Rules of Bankruptcy Procedure, is to assemble all of the debtor's assets for the benefit of creditors. . . Nothing in RESPA addresses the allowance or disallowance of a claim in bankruptcy or deprives the bankruptcy court of the exclusive authority to make determinations concerning bankruptcy claims. . .  Therefore, the intents of the statutes are not in conflict.

*Id*. at 160-61.  Citing favorably to *Randolph*, the court concluded by noting that enforcement of both statutes should not place an insurmountable burden on the debtor or the bankruptcy court.  *Id*. at 161.

Applying the aforementioned principles to this adversary proceeding and keeping in mind that only the Plaintiff, and not the Defendants, raised this issue, the court finds that the Bankruptcy Code and FDCPA are capable of co-existence.[17]   While conflicts between the two statutes may arguably exist to some extent, this court, much like the *Conley* court, has been unable to identify any *irreconcilable* conflict.  In addition, the Bankruptcy Code does not cover the entire subject matter of the FDCPA.  Each statute appears to retain a distinct and separate purpose, and this court has been unable to identify any clear and manifest intent to the contrary in the Bankruptcy Code.  This court, like the Third Circuit in *Simon*, finds *Randolph* persuasive given the Sixth Circuit's previous directives regarding implied repeal.  As such, this court concludes that the Plaintiff's claims under the FDCPA are not precluded by the Bankruptcy Code.

**B.      *The Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted***

Having determined that the FDCPA was not impliedly repealed by the Bankruptcy Code, the court must next address the particulars of this adversary proceeding.  In her Response, the Plaintiff does not argue that the Defendants were *per se* prohibited by the FDCPA from filing a stale proof of claim in the Plaintiff's bankruptcy case.  (Resp. at pp. 7, 9.)  Instead, the Plaintiff advances a more narrow argument by stating that "it is the *content* of the Defendants' proof of claim that give [sic] rise to liability under the FDCPA."  (Resp. at p. 7 (emphasis added); *see* Resp. at p. 9.)  Therefore, the ultimate issue before this court is thus whether the Complaint in this particular adversary proceeding supports claims for relief under the FDCPA due to the *content* of the Defendants' proof of claim.  This court concludes that, as a matter of law, the Complaint does not support the Plaintiff's claims for relief under the FDCPA.

---

[17]      Because the Defendants have not contended otherwise, this court need not engage in an in-depth analysis in this Memorandum Decision.

The purpose of the FDCPA is to protect consumers from "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt-collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692e. "The [FDCPA] is an extraordinarily broad statue" and must be construed accordingly.  *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448 (6th Cir. 2014) (citations omitted).  Further, the FDCPA imposes strict liability, therefore alleviating the need of the plaintiff to prove knowledge or intent, and actual damages need not be suffered.  *Id*. at 448-49.  Absent strong evidence of an exception, the FDCPA's protections afford relief "wherever unscrupulous debt collection practices might be found – and most certainly in litigation."  *Id.* at 450 (citing *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615-16 (6th Cir. 2009)); *see Currier v. First Resolution Inv. Corp*., 762 F.3d 529, 535 (6th Cir. 2014) (civil litigation filings can be a threat under FDCPA).

To determine whether a debt collector's conduct violates the FDCPA, the Sixth Circuit has instructed lower courts to apply the "least sophisticated consumer" standard.  *Stratton*, 770 F.3d at 450 (citing *Gionis v. Javitch, Block, Rathbone, LLP*, 238 Fed. Appx. 24, 28 (6th Cir. 2007)).  The Sixth Circuit has explained that:

> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. . . This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes. . . The standard thus serves a dual purpose: it (1) ensures the protection of all consumers, even the naïve and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.

*Id.* at 450-51 (citing *Gionis*, 238 Fed. Appx. at 28 (quotations omitted)).  In other words, the test is an objective one that "asks whether there is a reasonable likelihood that an unsophisticated

consumer who is willing to consider carefully the contents of a communication might yet be misled by them." *Grden v. Leiken Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011) (citation omitted).

In this adversary proceeding, the Plaintiff seeks relief under four specific sections of the FDCPA, none of which are availing for the reasons set forth below.[18]   (Compl. at ¶¶ 36-39.) Before addressing the four sections of the FDCPA however, the court must consider the Defendants' contention that the filing of a proof of claim is not an attempt to collect a debt, thereby proscribing relief under any section of the FDCPA.  (Def. Br. at p. 3.)  The Defendants characterize the filing of a proof of claim as a mere "request to participate in the distribution of the bankruptcy estate under court control. . ."  (Def. Br. at p. 4 (citing *In re McMillen*, 440 B.R. 907, 912 (Bankr. N.D. Ga. 2010).)  The Defendants contend that if a proof of claim was deemed a collection activity, then filing a proof of claim would conflict with section 362(a)(6) of the Bankruptcy Code, which stays any act to collect a claim against the debtor that arose prepetition. (*Id.*)  The argument is not persuasive, and this court finds the explanation to offer a distinction without a difference.

By filing a proof of claim, a creditor plainly seeks to recover on the debt owed.  This court adopts the reasoning in a recent decision addressing this very issue.  *See Lagrone v. LVNV Funding, LLC (In re Lagrone)*, 525 B.R. 419 (Bankr. N.D. Ill. 2015) (Wedoff, J.).  In *Lagrone* the court rejected the argument that the filing of a proof of claim is not a debt collection activity because the filing of a proof of claim would be fundamentally at odds with section 362(a)(6) of the Bankruptcy Code.  *Id*. at 425 (quoting *Humes v. LVNV Funding, LLC (In re Humes)*, 496

---

[18]     The parties have conflated these sections into one general argument due to their overlapping nature. Because the Complaint seeks relief under four separate sections of the FDCPA, this court shall address each such section, which admittedly leads to some unavoidable redundancy in this Memorandum Decision.

B.R. 557, 581 (Bankr. E.D. Ark. 2013)).  The *Lagrone* court identified the following two flaws

with such an argument:

> First, there is no contradiction between a proof of claim being an action to collect a debt and the automatic stay.  The automatic stay does indeed prohibit debt collection activity, and filing a proof of claim is an action to collect a debt, but it is well established that the automatic stay does not prohibit actions taken in the bankruptcy case itself.  *See Eger v. Eger (In re Eger)*, 507 B.R. 1, 1 (Bankr. N.D. Ga. 2014) (collecting authorities).
>
> Second, the FDCPA does not limit collection activity to actions against the consumer debtor personally. Rather, §1692k of the Act makes debt collectors liable to "any person" as to whom they violate its provisions, not simply to the consumer who owes the debt subject to collection.  Accordingly, the Seventh Circuit has found that the son of the person who owed a debt had standing under §1692 of the Act for his own injuries based on allegedly unfair and unconscionable debt collection practices.  *Todd v. Collecto, Inc*., 731 F.3d 734, 739 (7th Cir. 2013); *see Rivieria v. MAB Collections, Inc*., 682 F.Supp. 174, 176 (W.D.N.Y. 1988) (finding that the recipient of collection letters had standing to bring a claim under the FDCPA because "[a]ny person who comes in contact with proscribed debt collection practices may bring a claim").

*Id.*

In this adversary proceeding, the same reasoning applies. The automatic stay does not

prohibit the filing of a proof of claim in the Plaintiff's bankruptcy case any more than it did in

*LaGrone*.  In addition, the Sixth Circuit has held, much like the Seventh Circuit in *Todd*, that the

FDCPA extends to others who stand in the shoes of a consumer debtor.  *See Wright v. Fin. Serv.*

*of Norwalk, Inc*., 22 F.3d 647, 650 (6th Cir. 1994) (en banc) (FDCPA applies to anyone with

same authority as debtor to pen and read letters of debtor).  As the court in *LaGrone* noted, even

though a bankruptcy estate is distinct from a debtor, a proof of claim filed against a debtor's

estate could still give rise to a violation of the FDCPA.  Therefore, neither the automatic stay nor

the application of the FDCPA itself supports the proposition that a proof of claim is not an attempt to collect a debt.

Finally, from a practical standpoint, the Defendants have no reason for filing the proof of claim other than to collect a distribution from the bankruptcy estate. This court highly doubts that the Defendants elected to expend the time and resources to file a proof of claim for any reason other than to collect a debt from the Plaintiff's bankruptcy estate.

### 1.    *The Complaint Fails to Plausibly State a Claim Under 15 U.S.C. § 1692e*

The court next considers the Plaintiff's argument that the Defendants violated section 1692e, which provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This section provides a list of unlawful conduct without limiting the general application of the broad prohibition on false or misleading representations and unfair practices. In her Complaint, the Plaintiff relies on a specific subsection which prohibits the misrepresentation of the legal status of a debt. *See* 15 U.S.C. § 1692e(2)(A).

Even though the Defendants filed the proof of claim to collect a debt, a question remains under section 1692e as to whether the specific proof of claim filed *in the Plaintiff's bankruptcy case* is false, deceptive or misleading. This court concludes that it is not. It is important to recall that in the Plaintiff's underlying bankruptcy case, the Plaintiff identified LVNV as having a claim against the Plaintiff in the amount of $1,212.02. The Plaintiff did not identify the claim as one that is disputed, contingent or unliquidated, as Form Schedule F allows debtors in bankruptcy to do. After receiving notice of the bankruptcy, the Defendants filed the proof of claim, including the addendum thereto. The proof of claim cannot be construed as false, deceptive or misleading, even under the least sophisticated consumer standard. *See Grden*, 643

F.3d at 172. The proof of claim identifies a debt owed by the Plaintiff to the Defendants in the amount of $611.82, an amount that is actually less than that set forth on the Schedules filed by the Plaintiff. The proof of claim also contains specific information regarding the date the debt was charged off, the date of the last payment on the account, and the date of the last transaction, all of which were in the year 2000. The proof of claim essentially stops just short of giving legal advice to the Plaintiff. This court cannot perceive of anything false, deceptive or misleading about filing a proof of claim in a lesser amount and with specific disclosures after receiving the equivalent of an invitation from the Plaintiff to receive a distribution on account of such claim.

The Plaintiff further argues that the proof of claim mischaracterizes the legal status of the debt because the statute of limitations has run. *See* 15 U.S.C. § 1692e(2). The court disagrees that the proof of claim in any way misrepresents the status of the debt. To the contrary, the proof of claim reduces the amount identified by the Plaintiff in her Schedules. Again, the proof of claim discloses, in a user-friendly format, the dates of the last activity, transaction and charge off with respect to the account maintained by the Plaintiff with Bankfirst. Moreover, because the debt has not been extinguished, the Defendants are permitted to continue to inform the Plaintiff as to the amount of the debt, as discussed in more detail below. When Resurgent filed the proof of claim on behalf of LVNV, it was the only means by which the Defendants could communicate with the Plaintiff after she filed for bankruptcy. To have sent even an informative letter would have been foolish, as Resurgent would have subjected itself and LVNV to an allegation that such action was in willful violation of the automatic stay.

Just as importantly, the least sophisticated consumer who is *in bankruptcy* can most reasonably expect a proof of claim to be filed by a debt collector after the least sophisticated consumer has listed the debt collector on his or her schedules. In such a situation, the least

sophisticated consumer cannot possibly contend that he or she is a victim of a fraudulent scheme to induce collection on a stale debt when a wholly-accurate proof of claim is filed.  To hold otherwise would be to endorse an idiosyncratic, non-sensical and inconsistent interpretation of the proof of claim filed by Resurgent on behalf of LVNV.  It is an accurate proof of claim filed in a bankruptcy case and nothing more.

Although the Sixth Circuit has not considered the issue currently before this court, it did recently consider whether a settlement offer outside of bankruptcy seeking to resolve a stale debt violated the FDCPA.  *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393 (6th Cir. 2015).  In *Buchanan*, a debt collector sent a letter to a consumer which contained a "settlement offer" to resolve an unpaid debt without disclosing that the statute of limitations on such debt had expired. *Id.* at 395.  The letter stated that the holder of the debt for whom the debt collector was acting would be willing to settle the debt for a specific amount.  *Id.*  Critically, the settlement offer did not disclose to the consumer any information that would allow the consumer to determine that the statute of limitations had expired.  *Id.* at 396.  It also failed to disclose that under Michigan law, a partial payment on a time-barred debt restarts the statute of limitations period.  *Id.*  Upon receiving the settlement offer, the consumer sued the debt collector on behalf of herself and others similarly situated for violations under the FDCPA.  *Id.* at 396.  The debt collector filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), which was granted by the district court because it found the letter not to be misleading as a matter of law.  *Id.*

On appeal the Sixth Circuit reversed.  The Sixth Circuit first addressed the statute of limitations and its impact on a claim.  Consistent with Michigan law, the Sixth Circuit recognized that "a debt remains a debt even after the statute of limitations has run on enforcing it in court." *Id.* at 396-97 (citations omitted).  The Sixth Circuit further observed:

> As a result, when the six-year limitations period ran . . . that meant only that the creditor – LVNV today – could not enforce the debt in court without facing a complete legal defense to it.  Legal defenses are not moral defenses, however.  *And a creditor remains free, in the absence of a bankruptcy order or something comparable preventing it from trying to collect the debt, to let the debtor know what the debt is and to ask her to pay it.  There is nothing wrong with informing debtors that a debt remains unpaid* or for that matter allowing them to satisfy the debt at a discount.  For some individuals, such letters may offer a welcome solution to an outstanding debt.

*Id*. at 397 (emphasis added).  In addition, the Sixth Circuit noted that even an unsophisticated consumer could not infer that a settlement offer relating to a time barred debt constitutes a threat of litigation.  Notwithstanding these statements, the Sixth Circuit declined to find that the consumer's suit should be dismissed as a matter of law because (i) whether a settlement letter is misleading raises a question of fact, and (ii) the consumer should be given an opportunity to present evidence, including from an expert witness and a Federal Trade Commission report, as part of a motion for summary judgment.  *Id*. at 397-98.

The Sixth Circuit also concluded that the settlement letter could create confusion regarding the creditor's right to sue.  *Id.* at 398.  Relatedly, the Sixth Circuit considered whether the precise "settlement letter" at issue was misleading.  *Id.* at 399.  In order to answer this question, the Sixth Circuit first considered whether the settlement offer with respect to a time barred debt may falsely imply that payment could be compelled through litigation.  *Id.*  After reviewing numerous dictionary definitions of "settle," the court concluded that it is plausible for a "settlement offer" to falsely imply that the debt is enforceable in court.  *Id.*  The Sixth Circuit next noted that the settlement offer could mislead the least sophisticated consumer by enticing only a partial payment, thereby resetting the statute of limitations.  *Id.*  Finally, the Sixth Circuit

commented that if a debt collector is unsure about the applicable statute of limitations, it could include general language in the settlement offer but stop short of giving legal advice. *Id.* at 400.

After careful analysis, this court finds this adversary proceeding to be distinguishable from *Buchanan*. First and most importantly, *Buchanan* involved a settlement letter sent directly to a debtor outside of bankruptcy and must therefore be considered with the threat of civil litigation, not bankruptcy, in mind. Second, the settlement letter in *Buchanan* did not include the specific information that was contained in the addendum to the proof of claim filed by the Defendants. The information contained in the Defendants' proof of claim would allow even the least sophisticated consumer to determine that the debt was stale. Third, in *Buchanan* the debt collector initiated communications with the debtor by sending a letter directly to the debtor. Here, the Plaintiff, the very party seeking relief under the FDCPA, initiated the communications by advising the Defendants of the claims bar date and listing LVNV as a creditor of the Plaintiff's bankruptcy estate. Unlike in *Buchanan*, the Plaintiff invited, and is thus indirectly responsible for, the Defendants' attempt to receive a recovery on the debt owed to it. Fourth, the Sixth Circuit was concerned in *Buchanan* that the debtor would unknowingly restart the statute of limitations by making a partial payment. No similar concern exists in the context of the Plaintiff's bankruptcy case, where the Plaintiff will receive a discharge upon completion of her Plan. Fifth, the Sixth Circuit expressed some concern in *Buchanan* that the settlement letter, subjectively drafted by the debt collector and sent directly to the debtor, might cause confusion in an unsophisticated consumer. Unlike in *Buchanan* though, the Defendants did not send a settlement letter to the Plaintiff; rather, the only communication was the proof of claim using Official Form B-10, which was sent directly to this court. Sixth, in *Buchanan* the debtor had apparently made specific references to evidentiary issues, none of which are present in this

adversary proceeding. Seventh, the Sixth Circuit determined in *Buchanan* that, under the circumstances, the claims should survive a motion to dismiss. However, not all claims under the FDCPA are questions of fact that need be determined by a motion for summary judgment or even a trial. Instead, "[t]he Sixth Circuit and other courts of appeals have repeatedly ruled on these issues as a matter of law where . . . the allegations and/or evidence were plainly insufficient to establish deception or materiality." *Scheur v. Jefferson Capital Systems, LLC*, 43 F. Supp. 3d 772, 786 (E.D. Mich. 2014) (citations omitted).

Lastly, *Buchanan* did not involve the filing of a stale proof of claim where special protections are afforded to debtors by the Bankruptcy Code. This distinction is particularly important because a bankruptcy case is quite different from a collection action commenced by a debt collector, notwithstanding the *per se* prohibition imposed by the Eleventh Circuit in *Crawford*. *See In re Broadrick*, --- B.R. --- , 2015 WL 3855251, at *12 (Bankr. M.D. Tenn. June 19, 2015) (declining to implicate FDCPA when creditor files accurate proof of claim including all requisite information as to timing of debt which is not extinguished by statute of limitations).

In *Crawford*, a decision upon which the Plaintiff primarily relies, the Eleventh Circuit concluded that the filing of a proof of claim on a stale debt is the equivalent of filing a lawsuit to collect on a stale debt. *Crawford*, 758 F.3d at 1261; *but see Simmons*, 622 F.3d at 95-96 (filing of proof of claim in bankruptcy cannot form basis for FDCPA claim). The Eleventh Circuit placed great emphasis on a decision by the Seventh Circuit where the filing of *a state court collection action* on a stale debt was held to violate the FDCPA. *Id.* at 1259-60 (citing *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013)). The Eleventh Circuit, relying on *Phillips*, found that the filing of a proof of claim on a stale debt violated the FDCPA because consumers would be unaware of the statute of limitations defense, the passage of time would

prejudice the consumer debtor, and the delay would make it more likely that records would be unavailable. *Id.* at 1260. The Eleventh Circuit did not, however, consider protections available to debtors in bankruptcy that are not present in the context of a collection action.

As emphasized by other courts, several differences exist between collection actions outside of bankruptcy and the filing of proofs of claim in bankruptcy, including protection from the automatic stay, the entry of the discharge injunction, the commencement of the process by the debtor and not the debt collector, and the oversight provided by the courts and the trustee, all of which dilute, if not eliminate, the concerns expressed by the Eleventh Circuit in *Crawford*. *See*, *e.g.*, *Owens v. LVNV Funding, LLC*, 2015 WL 1826005 (S.D. Ind. Apr. 21, 2015), *appeal docketed*, No. 15-2044 (7th Cir. May 13, 2015); *Torres v. Asset Acceptance, LLC*, --- F. Supp. 3d ---, 2015 WL 1529297 (E.D. Pa. Apr. 7, 2015), *appeal docketed*, No. 15-2132 (3d Cir. May 13, 2015); *Donaldson v. LVNV Funding, LLC*, --- F. Supp. 3d ---, 2015 WL 1539607 (S.D. Ind. Apr. 7, 2015); *Robinson v. eCast Settlement Corp.*, 2015 WL 494626 (N.D. Ill. Feb. 3, 2015); *In re Broadrick*, --- B.R. ---, 2015 WL 3855251 (Bankr. M.D. Tenn. June 19, 2015); *In re Lagrone*, 525 B.R. at 419. This court need not restate what other courts have explained so well. Instead, this court shall limit its discussion by merely highlighting some of the protections in the Bankruptcy Code which distinguish a stale proof of claim in bankruptcy from a collection action seeking to recover on a stale debt.

First, in a collection action, the debtor, as the defendant, must assert the statute of limitations defense, most likely without ever having been apprised of the possibility that such period has expired. In bankruptcy, however, a debtor is typically represented by an attorney. Moreover, a trustee who has the fiduciary duty to examine and object to any improper proofs of claim, is appointed. Therefore, in bankruptcy a debtor is protected by an advocate in the form of

his or her attorney, and oversight in the form of a trustee. *See* 11 U.S.C. § 1302(b)(1) (incorporating 11 U.S.C. § 704(a)(5)). In her underlying bankruptcy case, the Plaintiff had the benefit of not only her attorneys, but also the Chapter 13 trustee, all of whom were fully presented with accurate information in the proof of claim that allowed them to determine that the statute of limitations had expired. Moreover, the Defendants had an obligation to provide the Plaintiff with information related to the claim, including the dates upon which certain events occurred. Fed. R. Bankr. P. 3001(c)(1)-(3); *see also In re Alexander*, 2014 WL 5449653, at *7 (Bankr. E.D. Tenn. Oct. 22, 2014) (allowing and sustaining statute of limitations objection to proof of claim based solely on review of proof of claim itself). In the Plaintiff's bankruptcy case, the Defendants fully disclosed all pertinent information short of giving legal advice, and the Plaintiff has not suggested anything to the contrary.

Second, bankruptcy cases, unlike collection actions, provide debtors with the benefit of the automatic stay. When the debtor files a bankruptcy petition and the automatic stay arises by operation of law, debt collectors are prohibited from taking actions to collect debts absent relief from the stay or an exception thereto. The debt collector is therefore limited in a bankruptcy to the filing of a proof of claim, unlike in a collection action where the debtor is forced to immediately respond to a complaint filed by the debt collector even though the statute of limitations has expired. The automatic stay, in conjunction with the claims allowance process, provides a structured means by which to review and object to claims asserted by debt collectors. In the Plaintiff's bankruptcy case, the Plaintiff was clearly protected by the automatic stay and was required to take no affirmative action, other than to object to the Defendants' proof of claim because it was unenforceable against her estate. *See* 11 U.S.C. § 502(b)(1). After this court

sustained the Plaintiff's objection to the proof of claim, no further action needed to be taken by the Plaintiff due to the automatic stay.

This court is not persuaded by *Crawford*.  In *Crawford*, the Eleventh Circuit did not consider the aforementioned protections.  In addition, *Crawford* did not discuss whether any disclosures were made in the proof of claim that would apprise the debtor and the trustee of the stale nature of the debt.  This adversary proceeding is clearly different.  In this adversary proceeding, the protections available to the Plaintiff under the Bankruptcy Code, combined with the Defendants' disclosures, preclude any finding of unfair, unconscionable, misleading or deceptive conduct.  For these reasons, this court declines to adopt *Crawford* as unnecessarily expansive.

In sum, although the Defendants' proof of claim is an attempt to collect a debt, the proof of claim is by no means false, deceptive or misleading.  The proof of claim is accurate, comports with all requirements of the Bankruptcy Code, and does not implicate any of the concerns expressed in *Buchanan*, which presented an entirely different situation.  As such, the Plaintiff has failed to state a claim under section 1692e upon which relief can be granted.

### 2.      *The Complaint Fails to Plausibly State a Claim Under 15 U.S.C. § 1692d*

The Plaintiff next alleges a violation under section 1692d, which prohibits a debt collector from "engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  This section of the FDCPA lists non-exclusive examples of the type of harassment, oppression and abuse prohibited by the FDCPA, including (i) the use or threat of violence or other criminal means to harm the person, reputation or property of the consumer, (ii) the use of obscene or profane language, (iii) the publication of a list of consumers who refuse to pay debts, (iv) the

advertisement for sale of any debt to coerce payment, and (v) the placement of inappropriate telephone calls.  15 U.S.C. § 1692d(1) – (5).  All of the examples "concern tactics intended to embarrass, upset or frighten a debtor."  *Harvey*, 453 F.3d at 330.

In this adversary proceeding, the mere filing of a proof of claim, an act endorsed by the Bankruptcy Code itself, cannot be said to cause any suffering and anguish to the Plaintiff.  Nor can the proof of claim be construed as embarrassing or otherwise causing humiliation to the Plaintiff after she knowingly listed the claim on her Schedules, which are readily available for viewing by the public.  If the Plaintiff truly believes that she suffered oppression, harassment or abuse, it was self-inflicted when she disclosed the claim and invited the Defendants to file their proof of claim.  The Complaint in this adversary proceeding is completely silent as to any tactic other than the actual filing of the proof of claim.  Without more, the allegations in the Complaint simply do not come close to the oppression, harassment and abuse contemplated by section 1692d.  The Plaintiff has therefore failed to state a claim under section 1692d upon which relief can be granted.

### 3.       *The Complaint Fails to Plausibly State a Claim Under 15 U.S.C. § 1692f*

The Plaintiff's next argument is that the Defendants are attempting to collect amounts by using unfair and deceptive methods, including means proscribed by law.  15 U.S.C. § 1692f(1). The FDCPA does not define an "unfair or unconscionable" practice under section 1692f, but it does set forth a non-exhaustive list of prohibited conduct, including (i) the acceptance or solicitation of a post-dated check absent certain circumstances, (ii) charging a person for communications by concealing the true purpose of the communication, (iii) taking or threatening to take action with respect to property, (iv) communicating via postcard, and (v) sending mail

without proper identification. 15 U.S.C. § 1692f(2) – (8); *see Currier v. First Resolution Investment Corp.*, 762 F.3d 529, 534 (6th Cir. 2014) (collecting cases).

In this adversary proceeding, the court is again cognizant of the proof of claim and the information contained therein. This court struggles with the Plaintiff's characterization of the proof of claim as being unfair or unconscionable. Again, the proof of claim filed by the Defendants contains various disclosures, none of which is alleged by the Plaintiff to be untruthful in any way. Instead, the addendum to the proof of claim provides all of the information that creditors are required to provide in bankruptcy. *See* Fed. R. Bankr. P. 3001(c)(3) (requiring that proof of claim be accompanied by statement with certain information where claims based on open-end or revolving consumer credit agreement); *see also* 11 U.S.C. § 502(b)(1) (debtor can object if claim is unenforceable against debtor). And, as previously noted, the information contained in the addendum provides sufficient information to determine that the proof of claim seeks to collect on a stale debt.

The court is also once again mindful of the fact that the Defendants were invited by the Plaintiff to file a proof of claim. *See Donaldson v. LVNV Funding, LLC*, --- F. Supp. 3d ---, 2015 WL 1539607, at *5 (S.D. Ind. Apr. 7, 2015) (nothing deceptive about proof of claim that reflects what is already known by the consumer). In this adversary proceeding, the Defendants actually provided more accurate and favorable information to the Plaintiff. The court therefore perceives nothing unfair or unconscionable on the part of the Defendants when they filed a wholly-accurate proof of claim.

In addition, as noted by the Sixth Circuit in *Buchanan* and as previously discussed, the statute of limitations has not extinguished the debt. *Buchanan*, 776 F.3d at 396-97. Instead, at the time the proof of claim was filed, it is indisputable that the Defendants maintained a right to

payment, but could not exercise unconscionable means to collect on the underlying debt. *See* 11 U.S.C. § 101(5)(A). The Defendants therefore remained free to ask the Plaintiff, or rather, her bankruptcy estate, to pay the debt by adhering to the procedures set forth in the Bankruptcy Code. *See Buchanan*, 776 F.3d at 397. The Defendants' request for payment was made by the only communication permitted under the Bankruptcy Code – the filing of a proof of claim.

Finally, the proof of claim bears little resemblance to a letter from a debt collector to an unsophisticated consumer like that at issue in *Buchanan*. Instead, as noted above, a proof of claim is filed in bankruptcy, a forum with numerous safeguards to protect debtors, including the automatic stay, the appointment of a trustee, and representation by attorneys who, the majority of the time, are entitled to be paid from property of the debtor's estate. In this adversary proceeding and throughout her bankruptcy case, the Plaintiff has been represented by experienced legal counsel who clearly understands how to object to stale proofs of claim and file adversary proceedings seeking relief under the FDCPA.[19] The Chapter 13 trustees in this District are also experienced and well-versed in identifying grounds upon which to object to proofs of claim, and do so with frequency absent the filing of an objection by a debtor.

Based on the content of the Defendants' proof of claim and protections afforded to the Plaintiff under the Bankruptcy Code, the Plaintiff has failed to state a claim under section 1692f upon which relief can be granted.

---

[19]   A review of this court's docket reveals that Plaintiff's counsel has filed at least four (4) more adversary proceedings seeking to hold debt collectors liable under the FDCPA for filing stale proofs of claim. *See*, *e.g.*, *Moreland v. Sys. & Sys. Tech., Inc.*, Adv. Pro. No. 15-80055 (Bankr. W.D. Mich. Feb. 26, 2015); *Henley v. Jefferson Capital Sys., LLC*, Adv. Pro. No. 15-80028 (Bankr. W.D. Mich. Jan. 31, 2015); *Payne v. AIS Services, LLC*, Adv. Pro. No. 15-80027 (Bankr. W.D. Mich. Jan. 31, 2015); *Taylor v. Cavalry Inv., LLC*, Adv. Pro. No. 14-80211 (Bankr. W.D. Mich. Sept. 2, 2014).

**4.      *The Complaint Does Not Plausibly State a Claim Under 15 U.S.C. § 1692g***

The Plaintiff's final argument is that the Defendants have improperly attempted to collect a debt without first obtaining verification of the debt, including its validity.    15 U.S.C. § 1692g(b).  The Sixth Circuit has stated as follows with respect to verification:

> The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation.  This information does not have to be extensive.

*Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014).

This court finds the Plaintiff's argument regarding verification to be without merit, to the extent not previously waived.  As noted by the Defendants in their Reply, the Plaintiff seemingly abandoned any request for relief under 1692g(b) when she failed to address it in her Response. Moreover, the Defendants filed the proof of claim only after the Plaintiff caused a notice and other documents in the bankruptcy case to be served on the Defendants.  The proof of claim clearly provides sufficient information for the Plaintiff to dispute the debt, as it provides all information required under Fed. R. Bankr. P. 3001.  Finally, if the Defendants had sent the verification as the Plaintiff claims was necessary, the Defendants, in all likelihood, would have subjected themselves to a motion for sanctions due to an alleged willful violation of the automatic stay.  *See* 11 U.S.C. § 362(k).  The Plaintiff's argument in this regard is therefore untenable.  As such, the Plaintiff has failed to state a claim under section 1692g upon which relief can be granted.

## **CONCLUSION**

For the foregoing reasons, this court finds that, as a matter of law, the Plaintiff has failed to plausibly state a claim for relief under the FDCPA.[20]  The Motion to Dismiss shall therefore be granted.  The court shall prepare a separate order that is consistent with this Memorandum Decision.

---

[20]     It is unnecessary at this time to consider other situations in bankruptcy which might give rise to violations under the FDCPA.

**Signed: July 8, 2015**





John T. Gregg
United States Bankruptcy Judge